## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANDREW DLUGOLECKI,
    *Plaintiffs*,

    v.

TOWN AND COUNTRY CREDIT
CORPORATION, ADLAI RICHARDS, and
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF AMERIQUEST
MORTGAGE SECURITIES INC., ASSET
BACKED PASS THROUGH CERTIFICATES
SERIES 2004-R1 UNDER THE POOLING &
SERVICING AGREEMENT DATED AS OF
FEBRUARY 1, 2004, WITHOUT RECOURSE
    *Defendants*.

Case No.

COMPLAINT

JURY TRIAL REQUESTED

July 20, 2007

## *INTRODUCTION*

1.    The Plaintiff brings this suit to rescind a predatory mortgage loan originated by Town & Country Credit Corporation ("TCCC") and assigned to Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass Through Certificates Series 2004-R1 Under the Pooling & Servicing Agreement Dated as of February 1, 2004, Without Recourse ("DBNT-AT"). This predatory loan has put the Plaintiff at eminent risk of losing his home to a pending foreclosure action in state court. The Plaintiff asserts that TCCC violated the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and the Connecticut Truth-in-Lending Act, Conn. Gen. Stat. § 36a-676 *et seq.*, (collectively "TILA" and "the Acts") by failing to properly notify him of his statutory right to rescind the mortgage in the manner required by the Acts and Regulation Z (12 C.F.R. Part 226). TCCC and Adlai Richards, a TCCC employee, have also violated a number of other statutes and the common law as further specified

below.  DBNT-AT is equally liable for rescinding the mortgage and shares liability as an assignee and for its own failure to honor Plaintiff's directive to rescind his mortgage transaction.

2.       There is currently a pending foreclosure action regarding the mortgage loan at issue in this suit against Mr. Dlugolecki in the Connecticut State Superior Court for the Judicial District of New Britain, Case No. HHB-CV-06-5002339-S.

## *PARTIES*

3.       The Plaintiff is a natural person residing in Bristol, Connecticut.

4.       Plaintiff is a consumer within the terms of the Truth in Lending Acts.

5.       The Plaintiff is ready, willing, and able to meet his tender obligations under the Acts.

6.       The Plaintiff has sustained actual damages including, but not limited to, defending a foreclosure action against him and paying fees and finance charges on the mortgage loan specified below as a direct and proximate result of the Defendants' misconduct.

7.       At all times relevant to this action, Adlai Richards was a loan officer employed by TCCC in Connecticut.

8.       Richards is a natural person.

9.       At all times relevant to this action, Richards was acting as TCCC's authorized representative and was acting in furtherance of the TCCC's business.

10.       It was Richards' job to solicit new customers and help customers proceed through the steps necessary to consummate a mortgage loan with TCCC.

11.       Richards was the loan officer for Mr. Dlugolecki's loan.

12.     Richards' whereabouts are currently unknown but can be established through discovery.

13.     Defendant TCCC is a Delaware corporation with a primary place of business in California.

14.     Defendant Deutsche Bank National Trust Company, is a foreign corporation with a primary place of business in Santa Ana, California.

15.     Defendant Deutsche Bank National Trust Company is the trustee of the Defendant asset-backed security known as:  "Ameriquest Mortgage Securities Inc., Asset Backed Pass Through Certificates Series 2004-R1 Under the Pooling & Servicing Agreement Dated as of February 1, 2004, Without Recourse."

16.     Deutsche Bank National Trust Company is the assignee and holder of Plaintiff's mortgage loan (originated by TCCC) in its capacity as the trustee of Ameriquest Mortgage Securities Inc., Asset Backed Pass Through Certificates Series 2004-R1 Under the Pooling & Servicing Agreement Dated as of February 1, 2004, Without Recourse.

17.     On information and belief, Deutsche Bank National Trust Company has also acted as assignee, holder, and/or trustee for other mortgage loans originated by TCCC and/or asset-backed securities containing mortgage loans originated by TCCC.


### JURISDICTION

18.     Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1640(e), 28 U.S.C. §§ 1331-32.

19.     This Court has jurisdiction over the Defendants because they regularly conduct business in this state.

20.     Venue in this Court is proper because the Plaintiff is a resident of Connecticut and this action concerns real property located in Connecticut.

### FACTUAL ALLEGATIONS

21.     TCCC enters into more than five transactions per year in which credit is extended and secured by the principal residence of a consumer and is used for purposes other than the initial acquisition or construction of the residence.

22.     TCCC is a "creditor" as defined in the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Connecticut Truth-in-Lending Act, Conn. Gen. Stat. (C.G.S.) § 36a-676 *et seq.*, and the implementing regulations set forth by the Federal Reserve Board, known as Regulation Z (12 C.F.R. Pt. 226).

23.     This mortgage transaction was a consumer credit transaction subject to the right of rescission as described by C.G.S. § 36a-683, 15 U.S.C. § 1635 and Reg. Z § 226.23 (12 C.F.R. § 226.23).

24.     In 2003 TCCC placed a "cold-call" telephone solicitation to Mr. Dlugolecki seeking to encourage him to refinance his mortgage with TCCC.

25.     TCCC and Richards led Mr. Dlugolecki to believe that he could afford to refinance his mortgage and obtain an additional extension of credit.

26.     In reliance on TCCC's and Richards' statements, Mr. Dlugolecki applied for a fixed-rate mortgage from TCCC.

27.     In the course of his application, Mr. Dlugolecki informed TCCC and Richards that his only sources of income were his monthly disability check in the amount of approximately $600 per month and rental income of approximately $1,200 per month.

28.     On or about December 22, 2003, Richards came to Mr. Dlugolecki's residence and had him sign numerous documents.

29.     Richards informed Mr. Dlugolecki that he was not signing final loan papers and that Mr. Dlugolecki had not yet received the loan.  Richards informed Mr. Dlugolecki that he was still being considered for some different loan programs and that the papers would be used when Mr. Dlugolecki got a loan.

30.     Mr. Dlugolecki signed the papers in reliance on Richards' statements.

31.     In actual fact, the documents were final.  TCCC had approved and offered Mr. Dlugolecki a loan, and by signing the documents Mr. Dlugolecki consummated a mortgage loan on his residence with TCCC without realizing it.

32.     The mortgage loan was for $122,400 at 7.99% interest.  This interest rate was fixed for 24 months and would then become adjustable at that time and every six months thereafter.  The terms of the loan provided that the interest rate could rise as high as 13.99% but could never go below the initial rate of 7.99%.  The terms also provided that, beginning January 1, 2006 (the first "change date"), the new interest rate (upon which a new monthly payment amount would be calculated) would be determined using an index rate derived from the most recent 6 month LIBOR rate as of the date 45 days before the change date.  The index rate would be added to a margin rate of 6% to produce the new interest rate on the loan.

33.     The initial interest rate of 7.99% on Mr. Dlugolecki's loan was higher than the rate that would have applied to his loan if TCCC had calculated the initial interest rate using the loan's formula for calculating rates beginning with the first change date.

34.     Had TCCC used this formula, Mr. Dlugolecki's initial interest rate would have been no higher than 7.2781%.

35.     During the December 22, 2003 consummation of this mortgage loan, Richards, as TCCC's representative, gave Mr. Dlugolecki a stack of papers to sign.

36.     Then, while Mr. Dlugolecki attempted to review and sign the documents, Richards began to talk incessantly in a distracting manner, asking Mr. Dlugolecki questions and talking about topics unrelated to the mortgage transaction.

37.     Mr. Dlugolecki was not represented by an attorney at the closing.

38.     Richards' distraction prevented Mr. Dlugolecki from reading all of the documents that he was asked to sign.

39.     Despite Mr. Dlugolecki's request for a fixed-rate loan, the loan documents were for a variable rate loan.

40.     Among the documents presented to Mr. Dlugolecki on December 22, 2003 were a loan application, a Truth in Lending Disclosure Statement, a Notice of Right to Cancel, and a Settlement Statement commonly known as Form "HUD-1A."

41.     Mr. Dlugolecki did not receive copies of all the documents at that time.  Most of them were subsequently sent to him by express mail.  At that time, he was told that he got the loan.

42.     Mr. Dlugolecki subsequently discovered that, despite informing TCCC and Richards of his readily provable income, a representative of TCCC (believed to be Richards), had entered false income and employment information on the loan application, making it appear that Mr. Dlugolecki had been self-employed for seven years, operating a non-existent business described as "Dlugolecki Imports" and earning $6,500 per month.

43.     Upon information and belief, Richards submitted the falsified income and employment information to a third-party in support of Mr. Dlugolecki's application for credit.

44.     Upon information and belief, Richards received compensation or other benefits from TCCC for each mortgage loan consummated (including Mr. Dlugolecki's mortgage loan) and/or based on the number of mortgage loans consummated.

45.     TCCC benefited from the consummation of mortgage loans, including Mr. Dlugolecki's, by selling them to "investors" like DBNT-AT.

46.     On information and belief TCCC received consideration in return for transferring Mr. Dlugolecki's mortgage loan to the Defendant asset-backed security known as: "Ameriquest Mortgage Securities Inc., Asset Backed Pass Through Certificates Series 2004-R1 Under the Pooling & Servicing Agreement Dated as of February 1, 2004, Without Recourse."

47.     By selling mortgage loans, including Mr. Dlugolecki's, to investors, TCCC substantially reduced the financial risk it would face in the event of the mortgagor defaulting on the loan.

48.     TCCC's business practice of selling mortgage loans to investors enabled TCCC to become more lax in its underwriting standards and encouraged TCCC and its representatives engage in misconduct including:

   a.   the falsification of information related to the loan application;

   b.   misleading consumers about the affordability or suitability of TCCC's loan products;

   c.   baiting consumers with one set of loan terms and then switching the loan terms to something more expensive;

   d.   engaging in conduct at the mortgage closing designed to prevent or substantially reduce the possibility that the consumer would be able to read and understand the loan documents;

e.   the presentation of incomplete or inaccurate documentation regarding mandatory Truth in Lending Act disclosures.

49.   These tactics were used by TCCC and its representatives as a means of tricking consumers into consummating mortgage loans with TCCC which the consumers would not have otherwise accepted.

50.   TCCC and its representatives committed all of these acts of misconduct in the making and consummation of Mr. Dlugolecki's loan.

51.   Upon information and belief Mr. Dlugolecki would not have qualified to receive the mortgage at issue from TCCC if Richards had not falsified Mr. Dlugolecki's income and employment information.

52.   Mr. Dlugolecki would not have consummated the mortgage loan with TCCC but for Richards' and TCCC's misconduct.

53.   TCCC assigned Mr. Dlugolecki's mortgage loan to DBNT-AT.

54.   DBNT-AT has not transferred Mr. Dlugolecki's mortgage loan to any other entity.

55.   The HUD-1A for Mr. Dlugolecki's mortgage loan included a charge on Line 903 for "Hazard ins prem to Uane-National Uns Under" in the amount of $818.00.

56.   Line 903 does not indicate that the term of this hazard insurance is less than the full term of the mortgage loan, nor does it indicate the actual term of the insurance.

57.   Line 1001 separately shows a charge of $204.51 for three months of hazard insurance as a reserve to be deposited with the lender (i.e. for escrow).

58.   According to the Truth in Lending Disclosure statement given to Mr. Dlugolecki, the finance charge for the mortgage transaction was $206,377.10.

59.     The finance charge on a loan subject to the Truth in Lending Act is a material disclosure that must be disclosed to the consumer in the manner set forth by TILA and Reg. Z. Pursuant to Regulation Z § 226.4(a) "The finance charge . . . includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  A premium for hazard insurance obtained from or through the creditor may only be excluded from the finance charge where the premium for the initial term of insurance coverage is disclosed.  Reg. Z § 226.4(d)(2)(ii).  "If the term of insurance is less than the term of the transaction, the term of insurance shall also be disclosed." *Id*.

60.     This finance charge and annual percentage rate (APR) disclosed to Mr. Dlugolecki are inaccurate and understated because they do not include the $818.00 listed on Line 903 of the HUD-1A.

61.     Additionally, because this transaction was subject to the right of rescission, TCCC was required to give Mr. Dlugolecki, at the closing, two copies of a notice of the right to cancel that clearly and conspicuously disclosed the date the cancellation (a.k.a. rescission) period expired.

62.     Pursuant to the Truth in Lending Act and Regulation Z, the rescission period expires at "midnight of the third business day following the consummation of the transaction[.]" C.G.S. § 36a-683, 15 U.S.C. § 1635.  For purposes of rescission a "business day" is defined as "all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. 6103(a), such as . . . Christmas Day."  Reg. Z § 226.2(a)(6).

63.     The Notice of Right to Cancel given to Mr. Dlugolecki at the closing (attached as Exhibit 1) is labeled "BORROWER COPY" in the lower, right corner and states that the "Final

Date to Cancel" is "December 25, 2003."  Also printed in the lower right corner is "12/22/2003 3:46:47 PM."

64.     December 25, 2003 was Christmas Day and, according to Reg. Z § 226.2(a)(6), was not a "business day" for purposes of TILA.

65.     Mr. Dlugolecki exercised his extended right to rescind the mortgage transaction by sending notice (via counsel) to TCCC by certified mail on August 23, 2006, which notice was received by TCCC.

66.     By letter dated September 11, 2006 TCCC refused to honor Mr. Dlugolecki's rescission letter based on the assertion that TCCC provided Mr. Dlugolecki with a Notice of Right to Cancel that accurately disclosed the "Final Date to Cancel" as December 26, 2003. TCCC enclosed a copy of that notice, which is attached hereto as Exhibit 2.

67.     Exhibit 2 shows a "Final Date to Cancel" of December 26, 2003 and indicates in the lower right corner "LENDER COPY."  Also printed in the lower right corner is a different date and time than what appears on Exhibit 1:  "12/30/2003 7:02:16 AM."  (Emphasis added).

68.     On information and belief, the date and time printed in the lower right corner of Exhibits 1 and 2 accurately represents the date and time at which the documents were printed by a computer and is automatically generated by the computer software used to create TCCC's mortgage transaction documents.

## COUNT ONE
## <u>VIOLATION OF TRUTH IN LENDING ACTS</u>

69.     Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

70.     The allegations of this count are raised against TCCC and DBNT-AT.

71.     In the course of this consumer credit transaction, TCCC violated the Connecticut and Federal Truth in Lending Acts by failing to deliver to Mr. Dlugolecki two copies of a notice of the right to cancel that clearly and conspicuously disclose the date the rescission period expired in the manner set forth by C.G.S. § 36a-683, 15 U.S.C. § 1635(a) and Reg. Z § 226.23(b).

72.     In the course of this consumer credit transaction, TCCC violated C.G.S. § 36a-678 and 15 U.S.C. § 1638 by failing to properly disclose the correct finance charge and annual percentage rate for this transaction.

73.     As a result of these violations, Mr. Dlugolecki has a continuing right to rescind the transaction until the third business day after receiving the correct disclosures, up to three years after consummation of the transaction pursuant to C.G.S. § 36a-683, 15 U.S.C. § 1635(a) and Reg. Z § 226.23(a).

74.     Mr. Dlugolecki properly exercised his extended right to rescind the mortgage transaction by sending notice (via counsel) to TCCC by certified mail on August 23, 2006, which notice was received by TCCC.

75.     TCCC has received the rescission notice.

76.     More than twenty calendar days have passed since TCCC received the notice of rescission.

77.     TCCC has failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction as required by C.G.S. § 36a-683, 15 U.S.C. § 1635(b) and Reg. Z § 226.23(d)(2).

78.     TCCC has failed to return to Mr. Dlugolecki any money or property given to anyone, including the TCCC, as required by C.G.S. § 36a-683, 15 U.S.C. § 1635(b) and Reg. Z § 226.23(d)(2).

79.     Mr. Dlugolecki has also notified DBNT-AT that he has exercised his right to rescind the mortgage transaction.

80.     More than twenty calendar days have passed since DBNT-AT received the notice of rescission.

81.     DBNT-AT has failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction as required by C.G.S. § 36a-683, 15 U.S.C. § 1635(b) and Reg. Z § 226.23(d)(2).

82.     DBNT-AT has failed to return to Mr. Dlugolecki any money or property given to anyone, including the DBNT-AT, as required by C.G.S. § 36a-683, 15 U.S.C. § 1635(b) and Reg. Z § 226.23(d)(2).

83.     Mr. Dlugolecki is ready, willing, and able to meet any tender obligation under the Acts.

84.     The assignee of Mr. Dlugolecki's mortgage is subject to his rescission pursuant to 15 U.S.C. § 1641(c); C.G.S. § 36a-683(k)(3).

85.     As a result of the aforesaid violations of the Acts and Regulation Z, pursuant to C.G.S. § 36a-683, 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), both defendants are liable for: Rescission of this transaction; termination of any security interest in Mr. Dlugolecki's property created under the transaction; return of any money or property given by Mr. Dlugolecki to anyone, including the defendants, in connection with this transaction; statutory damages of $2,000 for each defendant's failure to respond properly to Mr. Dlugolecki's rescission notice;

forfeiture of loan proceeds; actual damages in an amount to be determined at trial; and a reasonable attorney fee.

## COUNT TWO
## CREDIT REPAIR ORGANIZATIONS ACT

86.     Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

87.     The allegations of this count are raised against TCCC and Richards.

88.     Richards violated 15 U.S.C. § 1679b(a)(1)(B) by preparing and submitting a loan application that falsely inflated Mr. Dlugolecki's income.

89.     TCCC shares liability for Richards' misconduct pursuant to the doctrine of *respondeat superior* and as his employer.

90.     On information and belief, if an application containing Mr. Dlugolecki's true income had been submitted to TCCC instead of the falsified application, Mr. Dlugolecki would not have obtained the mortgage loan at issue in this foreclosure action, Mr. Dlugolecki would not have incurred the closing costs and other finance charges associated with this mortgage loan, and Mr. Dlugolecki would not currently be at risk of losing his home to foreclosure.

91.     TCCC and/or Richards are liable for Mr. Dlugolecki's actual damages, punitive damages, and attorney's fees set forth in 15 U.S.C. § 1679g.

## COUNT THREE
## FORGERY C.G.S. § 52-565 (TCCC)

92.     Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

93.     The allegations of this count are raised against TCCC.

94.     TCCC is liable for forgery pursuant to C.G.S. § 52-565 because it knowingly made, counterfeited, and uttered as true the document attached as Exhibit 2 (the Notice of Right to Cancel upon which TCCC relied when rejecting Mr. Dlugolecki's rescission letter).

95.     After receiving Mr. Dlugolecki's rescission notice, TCCC attempted to pass-off Exhibit 2 as a document signed by Mr. Dlugolecki at his mortgage closing when, in truth, the document was not created until after December 22, 2003.  TCCC did so in an attempt to justify its refusal to comply with Mr. Dlugolecki's rescission notice.

96.     TCCC asserted that Exhibit 2 was truly signed on December 22, 2003 and that it reflected the correct "Final Date to Cancel" of December 26, 2006 in order to justify its decision to refuse to comply with Mr. Dlugolecki's rescission letter even though Exhibit 2 was actually created on or about December 30, 2003—after the final date to cancel had expired.

97.     On information and belief, TCCC provided Exhibit 2 to DBNT-AT when Mr. Dlugolecki's loan was assigned to DBNT-AT.

98.     In doing so TCCC falsely uttered and represented to DBNT-AT that Exhibit 2 was a document provided to Mr. Dlugolecki and executed at the mortgage closing on December 22, 2006 even though the document was not created until after that date.

99.     On information and belief, DBNT-AT relied upon Exhibit 2 when refusing to comply with Mr. Dlugolecki's demand to rescind his mortgage.

100.    Mr. Dlugolecki has been injured by TCCC's forgery.

101.    TCCC is liable for double Mr. Dlugolecki's damages.

**COUNT FOUR**
**FORGERY C.G.S. § 52-565 (RICHARDS)**

102.    Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated

herein.

103.    The allegations of this count are asserted against Richards.

104.    Richards is liable for forgery pursuant to C.G.S. § 52-565 because he knowingly

made, counterfeited, and uttered as true the loan application containing falsified information.

105.    Richards prepared the falsified loan application and submitted it to others,

including TCCC, as if it was a loan application that truly contained the information Mr.

Dlugolecki provided to Richards.

106.    On information and belief, TCCC's underwriting department relied upon the

falsified loan application when granting the mortgage loan at issue to Mr. Dlugolecki.

107.    Mr. Dlugolecki has been injured by Richards' forgery.

108.    Richards is liable for double Mr. Dlugolecki's damages.

**COUNT FIVE**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**

109.    Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated

herein.

110.    The allegations of this count are raised against TCCC and Richards.

111.    The falsification of Mr. Dlugolecki's loan application information by TCCC

and/or Richards constitutes an unfair and deceptive act and practice in trade or commerce within

the meaning of Connecticut's Unfair Trade Practices Act, C.G.S. § 42-110a, *et seq.*, ("CUTPA").

112.    The act of taking a mortgage on Mr. Dlugolecki's property in order to secure a loan that TCCC knew or should have known he could not repay is unconscionable and constitutes an unfair and deceptive act and practice in trade or commerce within the meaning of CUTPA.

113.    Richards' professed superior business knowledge of mortgages, his conveyance of the false impression that Mr. Dlugolecki could afford the mortgage loan Richards was going to arrange, lying to Mr. Dlugolecki about the nature of the documents being signed on or about December 22, 2003, the attempts to distract Mr. Dlugolecki during the closing to prevent him from reading the documents, and the other misconduct specified in this complaint were all designed to get Mr. Dlugolecki to sign the closing papers and to take advantage of his lack of knowledge and lack of sophistication in financial matters.  All of these acts were unconscionable and unfair and deceptive acts and practices in trade or commerce within the meaning of CUTPA.

114.    TCCC's and Richards' misconduct in having Mr. Dlugolecki sign documents for a variable-rate loan, rather than the fixed-rate loan he requested, without informing him of the change and without giving him a reasonable opportunity to read the documents and thereby discover the change was unconscionable and an unfair or deceptive act in violation of CUTPA.

115.    According to C.G.S. § 36a-498a, lenders within the scope of the statute making a first mortgage loan are prohibited from charging prepaid finance charges that exceed the greater of 5% of the principal amount of the loan.

116.    TCCC is subject to the provisions of C.G.S. § 36a-498a.

117.    The prepaid finance charges on Mr. Dlugolecki's loan exceed 5% of the total amount of the loan.

118.    The above-described conduct of TCCC falls within the penumbra of the statutory concept of unfairness.

119.    Mr. Dlugolecki has suffered an ascertainable loss due to TCCC's and Doe's violations of CUTPA.  Specifically, he has incurred closing costs, finance charges, emotional distress, foreclosure-related expenses, and now risks losing his home as a result of this misconduct.

120.    Richards' and TCCC's conduct was undertaken without regard to the rights of consumers, especially Mr. Dlugolecki.

121.    As a result of these violations of CUTPA and pursuant to C.G.S. § 42-110g, Mr. Dlugolecki is entitled to rescission of the mortgage loan; his actual damages; damages for emotional distress and, in the discretion of the Court, punitive damages, attorney's fees, and costs.

122.    Mr. Dlugolecki also seeks injunctive relief pursuant to CUTPA barring Defendants and their successors or assigns from further pursing foreclosure of the mortgage loan, and requiring Defendants and their successors or assigns to accept such repayment terms as Mr. Dlugolecki can reasonably afford.

**COUNT SIX**
**<u>DETRIMENTAL RELIANCE</u>**

123.    Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

124.    The allegations of this count are raised against TCCC and Richards.

125.     Richards used his position as someone who had superior knowledge of the workings of the consumer lending industry and his position as a representative of TCCC to mislead Mr. Dlugolecki into believing:

    a.   Mr. Dlugolecki could afford the credit being offered to him;

    b.   Richards was going to create a loan application accurately stating the income and employment information Mr. Dlugolecki provided to Richards;

    c.   the loan documents presented to Mr. Dlugolecki on or about December 22, 2003 were not final and legally binding mortgage loan contracts; and

    d.   that TCCC was offering credit to him based on the income and employment information that Mr. Dlugolecki had provided to Richards.

126.     Richards committed the acts in this Count with conscious, willful and malicious disregard for the rights and safety of Mr. Dlugolecki, knowing that there was a great probability that his acts would cause harm to Mr. Dlugolecki – including but not limited to the loss of Mr. Dlugolecki's home to foreclosure.

127.     Given Richards' position, it was reasonable for Mr. Dlugolecki to rely on the statements and representations made by Richards and TCCC.

128.     Mr. Dlugolecki relied on those promises to his detriment.

129.     As a result of the reliance mentioned above, Mr. Dlugolecki suffered damages.

130.     Richards is liable to Mr. Dlugolecki in an amount to be determined at trial.

131.     TCCC shares Richards' liability as his employer.

## COUNT SEVEN
## <u>FRAUD IN THE INDUCEMENT</u>

132.    Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

133.    The allegations of this count are raised against TCCC and Richards.

134.    Richards and TCCC made false representations to Mr. Dlugolecki as a statement of fact.

135.    The false representations include, but are not limited to, the following:

   a.   Mr. Dlugolecki could afford the mortgage they offered to him based on his actual income and financial status;

   b.   Richards was going to prepare and submit a loan application to TCCC that accurately reflected the information Mr. Dlugolecki had provided to Richards;

   c.   TCCC was going to evaluate Mr. Dlugolecki's loan application based on his actual income and financial status;

   d.   The documents presented to Mr. Dlugolecki on or about December 22, 2003 were not final and legally binding contractual documents; and

   e.   The documents presented to Mr. Dlugolecki at the closing contained the loan terms that Mr. Dlugolecki and Richards had previously discussed.

136.    These representations were untrue and known to be untrue by the party making them.

137.    These representations were made to induce Mr. Dlugolecki to consummate a mortgage loan with TCCC.

138.    Mr. Dlugolecki consummated a mortgage loan with TCCC and was injured thereby.

## COUNT EIGHT
## <u>UNCONSCIONABILITY</u>

139.   Mr. Dlugolecki re-alleges all of the preceding paragraphs as if fully re-stated herein.

140.   The allegations of this count are raised against TCCC and DBNT-AT.

141.   The mortgage loan between Mr. Dlugolecki and TCCC was procedurally and substantively unconscionable.

142.   The manner in which Mr. Dlugolecki was tricked into consummating the mortgage loan, including but not limited to the falsification of his income and misrepresentation of the status of the loan on December 22, 2003 is indicative of the procedural unconscionability.

143.   The loan is substantively unconscionable for reasons including but not limited to:

   a.   The fact that it was unaffordable from the outset based on Mr. Dlugolecki's financial status.

   b.   Mr. Dlugolecki is disabled and a significant portion of his income is fixed (his disability check) so a variable rate loan having an interest rate that can go up, but never below the initial rate, is inappropriate for him.

   c.   The initial rate on the loan was set at rate higher than one that would have resulted had the rate been calculated using the formula to determine interest rate changes.

   d.   The prepaid finance charges exceed the amount allowed by C.G.S. § 36a-498a.

144.   Mr. Dlugolecki is entitled to a declaratory judgment that the mortgage loan is void and unenforceable by foreclosure.

145.   Mr. Dlugolecki is entitled to have the loan terms modified to enable him to repay the loan based on his actual income and ability to pay.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Dlugolecki respectfully requests that this Court:

1.       Declare the security interest in his home void and unenforceable;

2.       Enter an order rescinding his mortgage loan transaction pursuant to the statutory provisions and procedures of the Truth in Lending Acts and Regulation Z; alternately, entering an order rescinding his mortgage transaction pursuant to the common law and/or CUTPA.

3.       Order TCCC and DBNT-AT to take all action necessary to terminate any security interest in Mr. Dlugolecki's property created under the transaction;

4.       Order TCCC and DBNT-AT to return to Mr. Dlugolecki any money or property given by him to anyone, including TCCC, in connection with the transaction;

5.       Enjoin TCCC and DBNT-AT during the pendency of this action, and permanently thereafter, from prosecuting, or maintaining foreclosure proceedings on the Mr. Dlugolecki's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Mr. Dlugolecki of ownership of the property;

6.       Enjoin TCCC and DBNT-AT during the pendency of this action, and permanently thereafter, from furnishing any derogatory credit information to any credit reporting agency or any other entity regarding this mortgage transaction;

7.       Order TCCC and DBNT-AT to provide such information as may be necessary to advise all credit reporting agencies that the mortgage transaction has been rescinded and to remove all derogatory information that has been furnished.

8.       Award Mr. Dlugolecki actual and statutory damages for TCCC's and DBNT-AT's failure to properly respond to his rescission notice in the amount of twice the finance

charge in connection with this transaction, but not less than $200 or more than $2,000 each as provided under C.G.S. § 36a-683 and 15 U.S.C. § 1640(a);

     9.     Order that, because TCCC and DBNT-AT failed to tender in response to Mr. Dlugolecki's rescission notice, he has no duty to tender; or in the alternative, if tender is required, determine the amount of the tender obligation in light of all of Mr. Dlugolecki's claims and order TCCC and DBNT-AT to accept tender on reasonable terms and over a reasonable period of time based on Mr. Dlugolecki's actual ability to pay;

     10.     Award actual damages in an amount to be established at trial;

     11.     Award Mr. Dlugolecki punitive damages in an amount to be determined;

     12.     Award double damages for TCCC's and Richards' forgery, pursuant to C.G.S. § 52-565;

     13.     Award Mr. Dlugolecki costs and a reasonable attorney fee; and

     14.     Award such other and further relief as the Court deems just and proper.


**PLAINTIFF, ANDREW DLUGOLECKI,**

/s/ Andrew G. Pizor

By: _____

Andrew G. Pizor (ct27015)
apizor@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd.; Suite 512
Rocky Hill, Connecticut 06067
Tel (860) 571-0408, Fax (860) 571-7457